FLORIE PROULX *vs.* THE FRENCH WORSTED COMPANY.

MAY 1, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

POWERS, J. This is a petition, designated as a petition to review, filed with the workmen's compensation commission by an employee previously adjudged to have sustained a compensable injury, as set forth in an unappealed decree entered after hearing on an original petition for compensation benefits. It prays that the respondent be ordered to pay hospital and medical bills in an amount exceeding the legal maxima, that permission be granted for "major surgery" in futuro and for a counsel fee.

The petition was heard by a single commissioner. He thereafter entered a decree awarding the relief prayed for which on appeal was affirmed by the full commission. The cause is before us on respondent's appeal therefrom.

After the appeal had been perfected, because of the unusual and unique circumstances involved therein, we granted a stay of the orders contained in the decree conditioned on the posting of a bond in an amount appropriate to the circumstances.

The record discloses that on October 31, 1958, petitioner fell downstairs during the course of her employment, and on April 19, 1960 consulted Dr. Henri Gauthier. On that day he notified respondent by telephone that petitioner had placed herself in his hands for treatment and respondent referred him to its insurance carrier. The doctor, again by telephone, then notified the carrier which, within a day or two, requested petitioner to submit to an examination by its physician, Dr. Joseph C. Johnston, on April 22, 1960. Shortly after such examination Dr. Gauthier was advised by a Mr. Cutitar, personnel representative of respondent, that it was denying liability.

The record further discloses that Dr. Gauthier found petitioner to be suffering from a condition diagnosed by him as a rectovaginal fistula. She was admitted to the Woonsocket Hospital on April 25, 1960 and on the following day he performed an operation consisting of an excision of the fistula through the vaginal route and suturing the tissues. It is not disputed that the operation falls within the category of "major surgery." The petitioner was discharged on May 14 and readmitted on June 26, 1960 for a similar operation. She was again admitted on December 5 of that year and the same type of operation was performed the following day. All three such operations proving unsuccessful, Dr. Gauthier on December 30, 1960 performed a resection of the sigmoid colon, which was followed on January 7, 1961 by surgery to correct an intestinal obstruction (perforated ilium) secondary to the surgery of December 30, 1960.

No permission was sought for any of these five operations as provided in G. L. 1956, §28-33-5, which reads as follows:

"The employer shall subject to the choice of the employee as provided in §28-33-8, promptly provide for an injured employee such reasonable medical, surgical, dental, optical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus

for such period as is necessary, in order to cure, rehabilitate or relieve the employee from the effects of his injury, provided, however, that the charges for services and medicines exclusive of hospital services shall not exceed the sum of three hundred dollars ($300) in the case of an employee not receiving hospital services or receiving hospital services for not more than fourteen (14) days, and shall not exceed the sum of six hundred dollars ($600) in the case of an employee receiving hospital services for more than fourteen (14) days, and charges for diathermy and massage treatments in any case shall not exceed seventy-five dollars ($75.00) and no fee for major surgery shall be paid, unless permission therefor in writing shall first be obtained from a member of the workmen's compensation commission, the employer or the insurance carrier involved, except where compliance herewith may prove fatal to the employee. All hospital fees for treatment and services shall be limited to such charges as prevail in the community for private patients having similar treatment and occupying multiple bed accommodations and the laboratory fees and the fees for X-rays and anesthetics shall be those customarily charged by the hospital. In case the amounts stipulated by this section are not sufficient to cover necessary specialized or prolonged services, the workmen's compensation commission may order payment of additional charges after hearing upon petition, and its decision shall be final. The employer shall also provide all medical, optical, dental and surgical appliances and apparatus reasonably required to cure or relieve the employee from the effects of the injury, including but not being limited to the following: ambulance and nursing service, eyeglasses, dentures, braces and supports, artificial limbs, crutches and other similar appliances."

Although petitioner was injured October 31, 1958, it appears from the record that she became Dr. Gauthier's patient on April 19, 1960, but after consulting with him and despite the operations of April 26 and June 27 she did not file her claim for compensation benefits until September 19, 1960 (W.C.C. 60-2494). After a hearing thereon, petitioner

was found to have sustained a compensable injury, of which respondent had knowledge, resulting in a rectovaginal fistula. By a decree entered on March 3, 1961 she was found to be totally incapacitated and respondent was ordered to pay compensation therefor, as well as fair and reasonable charges incurred for necessary medical and hospital expenses in accordance with G. L. 1956, §§28-33-5 and 28-33-6.

There is no question as to the finality of this decree as it affects the issues in the instant proceedings.

Shortly after the filing of the original petition for compensation benefits on November 2, 1960, Dr. Gauthier made a written report to Maryland Casualty Company at its request. Other than this, however, he admittedly did not comply with the provisions of §28-33-8, the language of which is as follows:

"An injured employee shall at all times be entitled to treatment, care or rehabilitation by a physician, dentist or hospital of his own choice. Nothing herein contained shall prevent the treatment, care or rehabilitation of an employee by more than one (1) physician, dentist or hospital. No claim for care or treatment by a physician, dentist or hospital chosen by an employee shall be valid and enforceable as against his employer, the employer's insurer or the employee, unless the physician, dentist or hospital gives written notice of the employee's choice to the employer within fifteen (15) days after the beginning of the services or treatment and shall as often as every two (2) months thereafter while the services or treatment continue in writing present to the employer a signed progress report of the employee's condition and a bill for services to date, and shall in writing present to the employer a final bill for all unpaid services or treatment within three (3) months after the conclusion thereof."

The record before us further discloses that respondent, who had paid neither Dr. Gauthier nor the Woonsocket Hospital, filed an employer's petition to review petitioner's capacity which was assigned for hearing on May 31, 1962.

The petitioner thereupon filed the instant petition on May 24 requesting that the petitions be heard together. They were so heard, but only the employee's petition is before us and no specific consideration of respondent's petition need be given.

The consolidated hearings commenced on June 14, 1962 and continued from time to time through January 11, 1963. Much of the testimony adduced in behalf of employee's petition has heretofore been discussed. In addition, however, it is pertinent to relate that Dr. Gauthier gave as his reasons for failure to comply with §§28-33-5 and 28-33-8 that since respondent disclaimed all responsibility he considered further communication with it would be both futile and idle. He testified that the operations and hospitalization were necessary to cure and rehabilitate petitioner; that the fees charged for his services were reasonable; and that he had successfully corrected the condition referred to as "rectovaginal fistula." His bill, amounting to $1,710, was admitted as an exhibit with respondent's consent.

Doctor Gauthier further testified that he deemed it advisable to perform further surgery for the repair of an incisional hernia developed after the operation for a perforated ilium on January 7, 1961. He felt that petitioner ran the risk of an intestinal obstruction and he recommended preventative measures now rather than corrective surgery at some time in the future when circumstances would be less favorable.

The instant petition was apparently filed on the proposition that the necessary and reasonable charges provided in §28-33-5 are not in dispute. It seeks therefore to exceed such maximum expenses by the difference between them and the total amount of the doctor, hospital and medical bills. It also prays permission for "major surgery" in the future and it was to this aspect of the petition that Dr. Gauthier's last-mentioned testimony related.

Hubert Edson, comptroller of the Woonsocket Hospital, testified in detail as to the several periods and durations of petitioner's confinement; to the kind of accommodation provided on each such occasion and the prevailing rate therefor; to the various charges for the medication and services; and to the reasonableness of all such charges which amounted to $3,001.45. He was cross-examined by respondent which restricted its inquiry more or less to the hospital practices.

The hospital bills were not offered in evidence at the conclusion of the comptroller's testimony, but were submitted by petitioner at the close of the hearings and admitted over respondent's objection.

The single commissioner entered his decision on January 22, 1963 and found in favor of petitioner in all respects. Pursuant to §28-33-7, he then submitted the hospital, medical and Dr. Gauthier's bills to the medical advisory committee which, after examination of them and review of the transcript, unanimously found the doctor's bill to be fair and reasonable. As to the hospital charges, they were "rather unanimous" in their conclusion that such charges as a whole were "in all probability fair and reasonable." It is clear, however, that such qualification related only to medication and drugs not specifically itemized.

Following receipt of the foregoing report, the single commissioner entered a decree on June 7, 1963 which, after stating the facts as found by the commissioner and adjusting the hospital rates, ordered respondent to pay Dr. Gauthier's bill in the amount of $1,710 and the corrected hospital bills for the three periods of hospitalization; authorized continued treatment if necessary for the cure, rehabilitation and/or relief of petitioner; granted permission for major surgery to correct a hernia; and granted a counsel fee of $175.

From this decree, respondent seasonably appealed to the full commission which, on November 8, 1963, affirmed the

decree of the single commissioner. From said final decree respondent appealed to this court.

The respondent assigned as error a total of fifteen reasons of appeal, but has argued them as presenting certain questions and it is in such posture that we shall consider them.

It first contends that it was error to entertain petitioner's claim for benefits since it was made by way of a petition to review. Such a petition, it argues, is within the jurisdiction of the commission only when it is directed to the provisions of §28-35-45, the relevant language of which is as follows: "* * * upon the ground that the incapacity of the injured employee has diminished, ended, increased or returned, or that the weekly compensation payments have been based upon an erroneous average weekly wage."

In support thereof it cites *Newton* v. *Rhode Island Co.,* 42 R. I. 58, *E. Turgeon Construction Co.* v. *Andoscia,* 79 R. I. 347, and others. We are in complete accord with the principle enunciated in the authorities on which respondent relies, but in our judgment they are not controlling in the circumstances of the instant case. Although captioned "Employee's Petition to Review Agreement or Decree Concerning Compensation," it is clear from the nature of petitioner's claims set forth in her petition that the relief sought was cognizable by the commission. It is a form furnished by the commission, which on its face calls for information the nature of which indicates that the form as such may be used for purposes other than the strict review contemplated by the applicable statute.

Although the commission might conceivably provide forms more appropriately captioned, by merely considering the form and question as lending itself to multiple uses, the commission cannot be said to have, in effect, attempted to extend the jurisdiction conferred on it by §28-35-45. It is the substance which is to be considered and not the form, if respondent is to be heard on a contention which goes to the jurisdiction of the commission. In *Lopes* v. *B. B. & R.*

*Knight, Inc.,* 50 R. I. 16, looking to substance for the gravamen, we said at page 22, "The petitioner should not be denied relief because of a faulty designation of his petition," noting that it was the nature of the prayer that was essential.

Even so, however, respondent argues, it is clear from the evidence that neither Dr. Gauthier nor the hospital complied with the requirements of §28-33-8. It is undisputed that they gave no written notice to respondent within fifteen days after the beginning of their services or treatment, although Dr. Gauthier did, within the specified time, notify both respondent and its carrier by telephone that petitioner had placed herself in his care. It is likewise undisputed that neither furnished written reports of progress at two-month intervals nor submitted bills for services as required. Significantly, however, the hospital did submit bills for the periods of hospitalization commencing April 25 and June 26 on October 21 and 28, respectively, while Dr. Gauthier submitted a report on November 2, all of which was within two months of the filing of the original petition for compensation benefits on September 19, 1960, and at respondent's request. In the view we take of the significance thereof we are constrained to consolidate with respondent's contention in this regard, its further contention that since no written permission was obtained from a member of the commission, respondent, or its carrier for "major surgery" as required by §28-33-5, neither Dr. Gauthier nor the hospital is entitled to be paid for the reason that the hospitalization, the medication it supplied, and the doctor's treatment are all connected with the unauthorized surgery.

Before proceeding to consider such contentions, we are here constrained to comment on the scope of the record certified to this court in connection with the appeal. It was limited to the record compiled following the filing of the instant petition and it became necessary for us to direct the commission to send up the entire record as compiled

from the filing of petitioner's original petition on September 19, 1960.

The instant appeal before us was argued as though separate cases were involved. Such, however, is not correct. When an employee suffers an injury which results in entering into a preliminary agreement or the filing of an original petition, all proceedings before the commission which are based on that injury are of a single record, a seamless robe, which reaches completion only after all the employee's rights connected with such injury have been finally exhausted.

In the instant appeal, therefore, the findings of fact set forth in the decree of March 3, 1961, from which no appeal was taken, together with such issues as were present in the hearings upon which the decree of March 3, 1961 was based, constitute a part of the record before us and are dispositive of the instant appeal to the extent that such findings and the issues they resolve are relevant.

The hearings on the original petition were not concluded until after all five operations had been performed and petitioner had been released from the hospital for the last time. At the hearings the nature of the operations was the subject of inquiry by respondent and her hospitalization therefore was likewise in evidence. No question was raised at that time as to the validity of the surgery, albeit such issue was then present, and in our judgment respondent is foreclosed from raising it after the period for an appeal from the decree of March 3 had passed.

It was ordered by that decree that respondent pay all reasonable medical and hospital bills in accordance with the compensation act. Until the period during which the March 3 decree could have been appealed, respondent was in the position of an employer who refused or neglected to provide the medical assistance in accordance with §28-33-5. It thus became subject to the provisions of §28-33-6 which impose the same obligations, assuming liability is subsequently es-

tablished, as are imposed on an employer who accepts responsibility as contemplated by §28-33-5.

We are of the opinion, however, that an employer who falls within §28-33-6 is not entitled to the consideration which §28-33-8 extends to the employer who complies with §28-33-5. *Ferguson* v. *George A. Fuller Co.*, 78 R. I. 412, relied on by respondent is not in point.

However, there was open to respondent at the hearing on the original petition the right to question the nature of the surgery and to raise the objection that no permission had been sought. Likewise, such an employer is not liable for more than the reasonable cost of medical care and treatment as the same are fixed by the provisions of §28-33-5.

It follows, therefore, that when the decree of March 3, 1961 became final and no longer open to review, respondent was indebted to Dr. Gauthier and to the hospital in the amounts fixed by the statute as the reasonable maximum.

The instant petition, however, seeks authority to exceed the legal maxima by praying that the hospital and medical charges be allowed as submitted. In his decree, the single commissioner found the amount by which such charges exceeded the legal maxima to be reasonable and, on review, the decree was affirmed by the full commission. The respondent, however, further contends that the final decree should be reversed as to the allowance of the hospital charges for two reasons, namely, that the hospital bills were admitted without the laying of a proper foundation therefor and that, contrary to the conclusion reached by the full commission, the report of the medical advisory committee did not support the findings by the single commissioner on the reasonableness of the hospital bills. In support of the first reason, respondent cites *McVeigh* v. *McCullough*, 96 R. I. 412, 192 A.2d 437, and *Gray* v. *Kagan*, 90 R. I. 398. It argues, and correctly so, that these cases and those cited therein stand for the proposition that bills for services or supplies do not prove themselves. Rather, the necessity for such

services or supplies as well as the reasonableness of the charges must be supported by the testimony of one competent to give it.

An examination of the record before us, however, discloses that before the hospital bills in question were admitted in evidence, a proper representative of the hospital testified in detail as to each item thereof. Further, he testified that the charges were reasonable. Although the item for medication is listed in the bill for each of the three periods of hospitalization as "Medical & Surgical Supplies" and "Drugs," specifying an aggregate sum for each item without giving further particulars, when asked by the single commissioner if respondent wanted such items broken down the reply in effect was that it would limit its inquiry to the room rates. In our opinion, therefore, a sufficient foundation was laid by the witness Edson, corroborated by the testimony of Dr. Gauthier, as to the necessity for the services and supplies provided by the hospital.

Nor did the commissioner err in concluding that, based on the report of the medical advisory committee, the hospital charges were fair and reasonable. Although the phraseology employed by the committee is somewhat vague, there is no suggestion in its report that the charges were other than fair and reasonable. Taken as a whole, it is our opinion that the report warranted the finding made by the commission and in such circumstances that finding is final. See *McCoy* v. *Cataldo,* 90 R. I. 365.

It is further contended by respondent, however, that notwithstanding the reasonableness of the hospital charges for the services rendered, the commission erred in ordering payment for thirty-three days of hospitalization at a daily room rate which exceeded the maximum authorized by §28-33-5. It argues, as we understand it, that although the commission may be vested with jurisdiction to authorize expenses for medical care in excess of the dollar maximum provided

therein it is without jurisdiction to exceed the expense of the hospital accommodation expressly fixed by such statute.

This contention is premised on the fact that the daily rate of the Woonsocket Hospital for the type of accommodation to which petitioner was entitled was $16.50 and that for the thirty-three days in question the rate charged petitioner, and approved by the commission, was $25. This was the rate charged for the intensive care unit to which petitioner had been transferred following the operation on January 7, 1961.

Doctor Gauthier testified that in his considered opinion, petitioner's condition, following the operation in question, was such as to require confinement in the intensive care unit, thus reducing chances of infection. On the basis of this uncontradicted testimony, the full commission sustained the finding of the single commissioner that the additional charge was fair and reasonable, and justified as being necessary to effect a cure or rehabilitate petitioner.

This finding is supported by competent evidence, but the single commissioner overlooked the testimony of comptroller Edson on the basis of the hospital rate for the intensive care unit. He testified that this rate was determined by adding $4 per day to the usual rate charged for the room from which a patient was transferred. Although the commission recognized that by virtue of the statutory maximum the applicable daily room rate for petitioner was $16.50, it approved $25 per day for the reason that Dr. Gauthier had arranged to have petitioner assigned to a room the prevailing daily rate for which was $21. This had been the case in connection with petitioner's previous hospitalization. In those instances however, the commission properly reduced respondent's liability to $16.50.

It is clear, therefore, that the maximum daily allowance during the thirty-three days of confinement to the intensive care unit should have been $20.50 and the approved rate

of $25 should have been reduced to that figure. The decree, therefore, should be amended by reducing the hospital charges in the amount of $148.50.

Finally, the respondent's contention that the counsel fee awarded by the full commission was improperly allowed is without merit. The contention is predicated on the proposition that the petitioner was not entitled to prevail on the respondent's appeal to the full commission. Having determined that the respondent's contentions in this regard are without merit, a fortiori it follows that its objection to said counsel fee falls.

The respondent's appeal is denied and dismissed, the stay heretofore granted is dissolved, the decree appealed from as herein modified is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

JOSLIN, J., concurring. I concur in the result, but for a different reason. I attach no significance to the unappealed from decree of March 3, 1961 upon which the court appears to place principal reliance, excepting only as that decree may constitute a final determination of the respondent's liability for medical services of a sum not in excess of $600.

The question as I view it is whether an employer *who has denied liability for compensation* waives the right to assert noncompliance with the major surgery permission and notice requirements, respectively, of G. L. 1956, §§28-33-5 and 28-33-8, as defenses to its obligation to pay for surgical and hospital services received by an employee subsequent to that denial and prior to a judicial determination that the injury for which those services were received was compensable.

In *Palumbo* v. *United States Rubber Co.*, 97 R. I. 20, 195 A.2d 238, we held that if and when §28-33-8 applies, there must be a literal compliance with its notice provisions. In my opinion, and for the reasons set forth in *Palumbo*, the same rule applies to the permission for major surgery

provision of §28-33-5. In determining when either applies or when it is required that there be a literal compliance therewith, I apply a liberal rather than strict rule.

While not on all fours, *Bishop* v. *Frank Morrow Co.*, 68 R. I. 518, has persuasive force. There the court held that an employer who denied liability for compensation was precluded from contending that an employee who had unreasonably refused proper medical attention should be denied weekly compensation payments for the period of his refusal. In reaching that conclusion, the court at page 522 said: "* * * the respondent, until after the case reached this court, denied that the petitioner's hernia resulted from an accident arising out of and in the course of his employment by the respondent, thus denying any obligation to pay the expenses of surgical treatment for such hernia * * *."

In this case, as in *Bishop,* the employer, until adjudication as to compensability by the commission, refused to pay weekly compensation benefits and thereby denied also any liability for the medical expenses incurred in the care and treatment of the injury sustained. Now after an adverse decision on the former issue, the respondent claims the benefits which would flow from a literal application of the relevant provisions of §§28-33-5 and 28-33-8. In my opinion it is precluded from so claiming and it has waived the right to defend against this petition on the ground of noncompliance with those requirements.

ROBERTS, J., concurs in the concurring opinion of Mr. Justice Joslin.

*Abedon, Michaelson & Stanzler, Julius C. Michaelson, Richard M. Skolnik,* for petitioner.

*Gunning & LaFazia, Bruce M. Selya, Edward L. Gnys, Jr., Albert B. West,* for respondent.